IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DYLAN BRYNE,

                     Plaintiff,

  v.                                                      OPINION and ORDER

KILOLO KIJAKAZI,
Acting Commissioner of the Social Security                21-cv-53-jdp
Administration,

                     Defendant.

---

Plaintiff Dylan "Ilana" Bryne[1] seeks judicial review of a final decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, finding her not disabled under the Social Security Act. She contends that administrative law judge (ALJ) Michael Schaefer erred in evaluating her subjective allegations and the medical opinions about her condition, and by relying on vocational expert testimony that conflicts with the *Dictionary of Occupational Titles*. Bryne's arguments show that a different ALJ might have reached a different conclusion. But the Court's job is not to re-weigh the evidence. Under the deferential standard of review that applies here, the court will affirm the commissioner's decision.

BACKGROUND

**A. Procedural history**

Bryne applied for disability insurance benefits on February 1, 2018, alleging that she

---

[1] Plaintiff is transgender and uses the name Ilana.

had been unable to work since June 18, 2017, because of anxiety and depression. R. 191.[2] After the local disability agency denied her applications initially and upon reconsideration, Bryne requested a hearing before an ALJ, which was held on August 27, 2019, before ALJ Michael Schaefer. Bryne, who was represented by counsel, testified, as did Jacquelyn Wenkman, a neutral vocational expert. On November 14, 2019, the ALJ issued an unfavorable decision, finding Bryne was not disabled at any time from her alleged onset date through the date of the decision. The Appeals Council declined to review Bryne's claim, making the ALJ's decision the final decision of the commissioner.

**B. Function reports and hearing testimony**

In function reports submitted in support of her application, Bryne told the social security administration that she rarely left the house because of overwhelming anxiety. She spent all day at home on the computer, either making music, watching movies, or commenting on Twitter. R 196. She was able to cook meals, clean, do laundry and change the litter box, although she described "drifting" from tasks and needing reminders. She left the house approximately twice a week for one to two hours, to shop for groceries or go out to eat with her spouse. She did not drive, never having had a driver's license, but took public transportation. She said she had engaged in self-harm behaviors such as cutting, picking, pulling out her hair, and suicidal ideation. R 198. Bryne stated she could not attend work reliably on a full time basis in light of her anxiety and depression. R. 199–200.

At the hearing, Bryne testified that she stopped working in June 2017, after having worked for more than eight years as a teller at a credit union and, more recently, as a cashier

---

[2] Record cites are to the administrative transcript, located at Dkt. 15.

and stocker at a grocery store. R. 51-53. Bryne said she had been unable to perform either the teller or cashier jobs on a consistent basis because of overwhelming social anxiety, explaining that she felt scrutinized by the customers. R. 51. She had looked for work that she could do from home but was unsuccessful. R. 56. She spent about one or two hours a day composing music on a computer, although there were one or two days a week when she could not motivate herself to do that. *Id*.

The ALJ asked Bryne about reports in the record indicating that she had traveled to Chicago and had accompanied her wife to Europe for a few weeks for a teaching obligation. R. 56–57. Bryne said she had traveled to Chicago by bus by herself. She testified that she intended to stay for four days and spend time with friends and a woman who ran a record label, but she returned home after two days due to anxiety. On the Europe trip, Bryne said, she "basically hid" in the homes of the friends or relatives with whom they were staying, coming out primarily for meals and sometimes a walk. R. 58.

## C. Medical opinions

### 1. Treating psychologist Peter Kane, Ph.D.

Kane saw Bryne for psychotherapy approximately 2-3 times a month from October 2018 to the date of the hearing. Most of their sessions focused on Bryne's dislike of her appearance, anxiety about how others perceived her, and social avoidance. On January 23, 2019, after their tenth session, Kane wrote that he discussed with Bryne "her sense that she is impaired and cannot work" and agreed that "[w]orking is not a realistic option for the foreseeable future given her anxiety." R. 463. Kane repeated this opinion verbatim in subsequent progress notes. In addition, Kane completed a Mental Impairment Questionnaire on August 18, 2019, on which he indicated that Bryne's symptoms included mood disturbance,

3

loss of interests, difficulty concentrating, excoriation of skin, suicidal ideation, significant social withdrawal, decreased energy, daily ruminative thinking about her body, and persistent irrational fears. R. 499–505. Kane did not complete the section of the form asking him to assess Bryne's mental capacities for work, but he indicated that she would miss work about twice a month for treatment. R. 502.

### 2. Consultative examiner Lesley Baird Chapin, Psy.D.

Bryne attended a mental status evaluation with Chapin on September 6, 2018, at the request of the social security administration. R. 375–82. After interviewing Bryne and her wife, Chapin opined that Bryne met the diagnostic criteria for major depressive disorder, generalized anxiety disorder, social anxiety disorder, agoraphobia, and unspecified obsessive-compulsive disorder. Commenting on Bryne's capacity for work, Chapin opined that Bryne had the following limitations:

- no limitations on her ability to understand, remember, and carry out simple instructions, with the caveat that she may be more limited "in certain contexts or as demands increase;"

- no limitation on her ability to respond appropriately to supervisors and coworkers;

- moderate limitations in her ability to maintain concentration, attention, and pace;

- extreme limitation on her ability to withstand routine work stress, noting that she tended to have "a great deal of avoidance, particularly in the work place when interacting with people;" and

- moderate limitation adapting to changes.

R. 382.

4

### 3. Non-examining state agency psychologists

Joseph Cools, Ph.D., and Robert Barthell, Psy.D., consultants for the social security administration, reviewed Bryne's record on April 9, 2018, and November 17, 2018, respectively. R. 81–86 and R. 97–102. Both reviewers concluded that Bryne was capable of carrying out simple instructions and maintaining attention/concentration for extended periods; was moderately limited in her ability to respond to changes in the work setting; and was capable of brief, infrequent, and superficial contact with others.

### D. Third party statements

Bryne's wife, Miriam Hall, submitted a statement describing Bryne's social anxiety, the difficulties she had working at the grocery, and her daily activities. She said Bryne generally spent a few hours a day working on electronic music on her computer, socializing with friends on the internet, and doing household tasks like putting away dishes or cleaning the bathroom. Bryne made lunch and dinner for both of them most days and was responsible for making sure bills got paid. Hall said that "any sense of pressure, commitment, obligation" could set off Bryne's anxiety, and she spent a large amount of time "frozen" in bed or on the couch. R 213–14. Bryne typically left the house three times a week, once to go out to eat with Hall, once to go to the coffee shop to work on her music, and once to run errands with Hall.

Two former co-workers who supervised Bryne as a cashier also submitted statements on her behalf, corroborating her statements about her difficulties working at the grocery and frequent absences. R. 227, 228.

### E. ALJ decision

ALJ Shaefer issued a written decision on November 14, 2019. R. 20-31. He determined that Bryne suffered from the severe impairments of major depressive disorder, generalized

anxiety disorder, social anxiety, gender dysphoria, and obsessive-compulsive disorder, but that her impairments were not severe enough alone or combined to meet or equal the criteria of any impairment the commissioner deems presumptively disabling (aka "a listed impairment"). R. 22. He concluded that Bryne had the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but that she had several non-exertional limitations, specifically:

- she was capable of understanding, remembering and carrying out only simple instructions and routine tasks in a work environment with few, if any, changes in work duties;

- she had to avoid exposure to more than moderate levels of noise, defined as that degree of noise found in ordinary retail or office settings;

- she could have only incidental contact with the public;

- she was precluded from work involving direct customer service;

- she could have occasional, brief and superficial interaction with co-workers, but could not perform tandem tasks with co-workers more than incidentally (for example, she could work around others, share tools or help lift or carry items as needed, but was precluded from work that routinely required cooperative effort with other workers); and

- she could interact with supervisors only occasionally.

R. 25. Relying on Wenkman's testimony in response to a hypothetical incorporating these limitations, the ALJ found that Bryne wasn't disabled because she could work as a cleaner, office helper, or packer,[3] positions that were sufficiently available in the national economy. R. 31.

---

[3] In his decision, the ALJ identified the packer job as DOT 920.687-010. R. 31. But the parties agree this was a typo: Wenkman identified the job as DOT 920.687-130. R. 72.

6

Bryne filed a request for review with the Appeals Council, which declined to review her case. She then filed this action for judicial review under 42 U.S.C. 405(g).

OPINION

This court must uphold the commissioner's decision to deny benefits the if ALJ applies the correct legal standards and his decision is supported by substantial evidence. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). The "substantial evidence" standard is deferential, requiring only that the ALJ base his decision on relevant evidence that a reasonable person could find sufficient to support the decision. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). The ALJ need not discuss every piece of evidence in the record, but he must explain his reasoning with sufficient detail to "build an accurate and logical bridge from the evidence to his conclusion" to deny benefits. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

Bryne contends the ALJ erred in evaluating her subjective allegations and the medical opinions about her condition. She raises an additional argument about the VE's testimony, which I discuss only briefly.

A. **Subjective symptom evaluation**

In adjudicating disability claims, an ALJ must evaluate the claimant's symptoms and the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1529(a). In determining the credibility of the claimant's allegations regarding the intensity and persistence of her symptoms, an ALJ considers several factors, including objective medical evidence, medication, treatment, daily activities, and any inconsistencies between the allegations and the record. 20 C.F.R. § 404.1529(c). "So long as an ALJ gives specific reasons supported by the record [the

Court] will not overturn his credibility determination unless it is patently wrong." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015).

Here, the ALJ found that the record failed to substantiate Bryne's allegations of disabling symptoms. R. 27. He relied primarily on two pieces of evidence: (1) the findings during mental status evaluation, during which she was observed to be cooperative and pleasant, with no apparent psychomotor slowing, agitation or remarkable mental dysfunction; (2) her activities, which he found showed that she functioned better "than one would expect given her allegations of disabling symptoms." R. 27. Specifically, he noted that Bryne flew to Europe, composed music, used social media, spent time with others, did laundry, paid bills, and managed her basic activities of daily living. *Id*.

Bryne focuses primarily on the ALJ's analysis of her activities. She argues the ALJ mischaracterized her social activities by ignoring the intense anxiety she had while away from home and her difficulties at work, as corroborated by the third-party reports from her wife and former supervisors. Her argument is unpersuasive. An ALJ "need not discuss every detail related to every factor" relevant to the credibility analysis. *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021). Although the ALJ highlighted the evidence that supported his conclusion, it is plain that he did not ignore the evidence of Bryne's reported discomfort in social situations or the qualified nature of her activities. To the contrary, he expressly noted the third-party reports, recognized that Bryne's capacity to engage in activities during her trips or excursions to Europe and Chicago was "limited," and found she had "significant difficulty in interacting with others." R. 24, 27. Further, contrary to Bryne's argument, the ALJ did not equate her activities with the ability to hold a job. As he stated in his decision, none of Byrne's activities "definitively" contradicted her claim that she could not work, but viewed as a whole and with the relatively

8

normal objective findings, they tended to show that she could perform work within the restrictive limits of the RFC. R. 28.

Keeping in mind that this court cannot reweigh the evidence, I am satisfied that reasonable minds could find from this record that Bryne's social anxiety was not so severe as to be disabling. In particular, her ability to engage in voluntary activities such as traveling to Europe and Chicago and going to restaurants and coffee shops weekly—even with difficulty— suggested that her symptoms were not as severe or limiting as she claimed. *See Prill v. Kijakazi*, 23 F.4th 738, 748 (7th Cir. 2022) (plaintiff's ability to garden undercut her claimed limitations because, even though she stated she could garden only rarely because it caused pain, "she nevertheless engaged in a voluntary activity that would have aggravated the conditions she alleges were disabling."). The ALJ also reasonably relied on Bryne's interactions with others in person and online, her report that she never lost a job because she was unable to get along with others, and her noted pleasant and cooperative appearance at examinations, including throughout the entire consultative examination. R. 24. In addition, he properly considered the relatively normal objective findings during Bryne's mental status evaluations, which Bryne does not challenge. Finally, the ALJ largely credited Bryne's allegations and the third-party reports concerning the difficulties she had working as a cashier by restricting her from jobs involving direct customer service or requiring more than incidental public contact or more than occasional interactions with co-workers and supervisors. Bryne proffers a contrary view of the evidence that could reasonably support a finding of disability, but "the presence of contradictory evidence and arguments does not mean the ALJ's determination is not supported by substantial evidence." *Gedatus*, 994 F.3d at 903.

In sum, the ALJ's decision makes clear that he weighed all the important evidence in the record but was ultimately not persuaded that Bryne's symptoms were so severe as to preclude her from all work activity. Because that conclusion was not patently wrong, I must affirm it.

## B. Medical opinion assessment

In assessing medical opinion evidence, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 405.920c(a). Rather, the ALJ is to consider the following factors when determining the proper weight to apply to the opinion or prior administrative finding: (1) supportability; (2) consistency; (3) the relationship with the claimant, including the length, purpose, and extent of the treatment relationship, the frequency of examinations, and the examining relationship; (4) specialization; and (5) other factors brought to the attention of the Commissioner. 20 C.F.R. § 405.1520c(c). The ALJ must consider all of these factors, but he need explain only how he considered supportability and consistency. § 404.1520c(b). The court will affirm the ALJ's assignment of weight to various medical opinions if it is supported by substantial evidence. *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021). It can't reweigh the evidence or substitute its judgment for the ALJ's. *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).

Here, the ALJ complied with the regulation by discussing all the medical opinions and explaining how persuasive he found them, giving consideration to their supportability and consistency with other evidence in the record. R. 28–29. The ALJ found most persuasive the opinions of the state agency consultants, Cools and Barthell. The ALJ reasoned that:

10

> Both consultants support their conclusions with reference to objective clinical findings, which demonstrate the claimant's limitations due to social anxiety, slightly reduced memory, and the claimant regularly presenting to her providers as sad and depressed. In addition, their opinions are consistent with each other's. Their opinions are also consistent with the objective clinical findings that demonstrate the claimant's ongoing mental health impairments. In addition, the claimant has demonstrated fair to good functioning including her ability to travel, compose music, and interact with others.

R. 28 (citations omitted).

The ALJ acknowledged that Bryne's treating psychologist, Kane, had opined numerous times in his progress notes that working was not a "realistic option" for Bryne given her anxiety. R. 29. But the ALJ pointed out that Kane did not cite any clinical findings in support of his conclusion or explain the reasons behind it. *Id*. Further, found the ALJ, Kane's opinion was inconsistent with his own objective findings from his meetings with Bryne, where Kane observed her to have normal concentration and attention, normal thought content, logical thought processes, normal speech, and good insight and judgment. *Id*. Finally, the ALJ noted that whether a person is able to work is a matter reserved specifically for the commissioner. *Id*.

Bryne does not dispute that the ALJ complied with the regulation and explained his findings with respect to the supportability and consistency of the medical opinions. Instead, she disputes the correctness of those findings. First, she argues that the ALJ's rejection of Kane's opinion conflicts with *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012), where the court stated that even though the commissioner bears the ultimate responsibility for determining a claimant's ability to work, an ALJ cannot ignore a treating physician's statement that his patient is "unable to work." But the ALJ did not "ignore" Kane's statement; as noted, he found it to be neither well-supported by Kane's own treatment notes nor consistent with other

11

evidence in the record, including other medical opinions, that suggested that Bryne was capable of a restricted range of work.

Turning to that conclusion, Bryne disputes the ALJ's finding that Kane's statement was not supported by his treatment notes. Bryne points out that Kane's notes document her struggles with anxiety and depression, repeated picking at her skin, social isolation, and overarching discomfort with her gender transition and appearance. She also says Kane's opinion was *consistent* with other evidence in the record, including treatment notes from her former psychologist documenting similar symptoms, along with statements from former supervisors, who noted that Bryne would often become upset while at her register, called in sick or left early frequently, and sometimes had anxiety attacks so severe that her employer would call Bryne's wife and ask her to pick Bryne up from work. But the ALJ acknowledged all of this evidence in his decision. He ultimately decided to give more weight to other evidence suggesting that Bryne was less impaired, namely: the objective findings during mental status evaluations; Bryne's ability to travel to Europe, Chicago and other places; her ability to interact online and with her spouse, friends, and treatment providers; and the opinions of the state agency consultants. The ALJ also noted that, although Kane submitted a mental functional capacity questionnaire, he did not complete the portion that asked him to assess Bryne's specific work-related abilities.

These were good reasons, adequately supported by the record, for the ALJ to give little weight to Kane's opinion. Kane's opinion was conclusory, and he declined to offer an assessment of Bryne's specific work-related abilities. To be sure, Kane endorsed a number of signs and symptoms of anxiety and depression, but symptoms alone are not disabling, and Bryne does not dispute that her mental status exams were largely normal. Further, as discussed

12

above, the ALJ reasonably concluded that Bryne's activities suggested a level of functioning that was compatible with some kinds of work.

In another unpersuasive argument, Bryne argues that the ALJ failed to note that one of the state agency consultants, Joseph Cools, Ph.D., found that Bryne had "social anxiety" and "frequent crying spells," "may" be distracted if she worked in close proximity to others, and "may" have difficulty performing at a consistent pace and maintaining regular attendance. R. 85. But in spite of these equivocal statements, Cools agreed with the ALJ that Bryne "can perform the basic mental demands of unskilled work." *Id*. Moreover, the ALJ accepted that Bryne had significant social limitations, adopting a very restrictive RFC that precluded her from interacting with others except on a brief, superficial basis. Nothing in Cools's assessment conflicts with this RFC.

Finally, Bryne argues that the ALJ erred in rejecting Chapin's conclusion that Bryne had extreme limitations in adapting to workplace stress due to her avoidance tendencies. The ALJ explained that he found this extreme limitation inconsistent[4] with the evidence that Bryne presented to her providers as cooperative and pleasant, reported spending time with others, traveled to Europe, Chicago, and other places to be with friends, and interacted with people online. R. 28. In the ALJ's view, Bryne's social anxiety could be accommodated by limiting her to only incidental contact with the public and no work involving direct customer service. *Id*. Bryne does not really challenge this finding except to suggest that the ALJ should have given more weight to Chapin's opinion because Chapin examined her. But the case she cites, *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014), was decided before the social security

---

[4] The ALJ's decision uses the word "consistent," R. 28, which plainly is a typo.

administration changed its rules to provide that an examining physician's opinion was not entitled to any specific evidentiary weight. *See id*. (citing 20 C.F.R. § 404.1527(c) "Evaluating opinion evidence for claims filed before March 27, 2017."). And in any case, unlike the ALJ in *Beardsley*, the ALJ in this case provided a valid explanation for preferring the agency physician's conclusions about Bryne's ability to work over Chapin's, including the largely normal clinical findings and Bryne's demonstrated "fair to good functioning," including her ability to travel, compose music and interact with others. R. 28.

Ultimately, the crux of Bryne's argument is that the ALJ "minimized" the evidence that favored her and placed "undue weight" on the evidence that didn't. Dkt. 19, at 18. Under the substantial evidence standard, however, this court must defer to the ALJ's weighing of the evidence so long as it was reasonable. Bryne has failed to show that it wasn't. Although a different ALJ might have deferred to Kane's opinion, I cannot say that it was *unreasonable* for the ALJ to find the opinions of the state agency consultants better supported and more consistent with the record. So Bryne is not entitled to reversal on this ground.

## C. Vocational expert testimony

Bryne argues that the vocational expert's testimony that Bryne could work as a packer, office helper, or cleaner conflicts with the descriptions of those positions in the *Dictionary of Occupational Titles*, and that the conflicts were so obvious that the ALJ should have questioned the VE further before relying on her testimony. *See Overman v. Astrue*, 546 F.3d 456 (7th Cir. 2008). But on reply, she appears to concede that she could perform the packer job, DOT 920.687-130, of which there are 163,000 jobs nationally. Dkt. 27, at 4. (Her initial challenge to the packer job used the DOT number cited in the ALJ's decision, which she concedes was a typo.) And she makes no suggestion that 163,000 is not a "significant number." *See Milhem v.*

14

*Kijakazi*, 52 F.4th 688, 696 (7th Cir. 2022) (upholding finding that 89,000 was significant); *Weatherbee v. Astrue*, 649 F.3d 565, 572 (7th Cir. 2011) (finding 140,000 positions "well above the threshold for significance"). Accordingly, I have no basis to overturn the ALJ's step five determination.

### D. Conclusion

The ALJ didn't err in rejecting Byrne's allegations of total disability or Kane's conclusory opinion that Byrne couldn't work. He considered all the important evidence, weighed the appropriate factors, and built an accurate and logical bridge from the evidence to his conclusion. Although a different factfinder might find from this same evidence that Bryne is disabled, the evidence does not compel that conclusion. Accordingly, I must affirm the commissioner's decision.

### ORDER

IT IS ORDERED that Dylan Bryne's motion for summary judgment, Dkt. 18, is DENIED, and the administrative decision is AFFIRMED. The clerk of court is directed to enter judgment in favor of the defendant and close this case.

Entered January 30, 2023.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge